IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISON

| | | |
|---|---|---|
| JULIA RENEE MURNAHAN, | ) | CASE NO. 3:19-CV-01348 |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | WILLIAM H. BAUGHMAN, JR. |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | MEMORANDUM OPINION AND |
| SECURITY, | ) | ORDER |
| | ) | |
| | ) | |
| Defendant. | | |

## Introduction

Before me[1] is an action by Julia Renee Murnahan under 42 U.S.C. § 405(g) seeking

judicial review of the 2018 decision of the Commissioner of Social Security that denied

Murnahan's 2016 application for disability insurance benefits and supplemental security

income.[2] The Commissioner answered[3] and filed the transcript of the administrative

---

[1] The parties have consented to my exercise of jurisdiction and the matter was then
transferred to me by United States District Judge Jeffrey J. Helmick in a non-document
order entered on July 27, 2020.
[2] ECF No. 1.
[3] ECF No. 11.

proceedings.[4] The parties have briefed their positions,[5] submitted additional authority[6] and participated in a telephonic oral argument.[7]

For the following reasons the decision of the Commissioner will be affirmed.

## Facts

The relevant facts here relate to a single assignment of error[8] and are not disputed.[9] As stated by Murnahan, her assignment of error assumes that the RFC is supported by substantial evidence and so does not contest any medical evidence.[10] Nonetheless, some background facts are briefly given here to provide context, to be followed by facts relevant to the present issue.

***Background***  Murnahan, who was 45 years old at the time of the hearing[11] and has a 10th grade education,[12] formerly worked as fast food shift manager but can no longer perform this past relevant work.[13] The ALJ found that she had severe physical impairments such as to hip and degenerative disease, as well as mental impairments such as anxiety, panic disorder, bipolar disorder, PTSD, and cocaine abuse.[14] The ALJ further found, after

---

[4] ECF No. 12.
[5] ECF Nos. 15 (Murnahan), 18 (Commissioner), 19 (Murnahan reply).
[6] ECF Nos. 20 (Commissioner), 22 (Murnahan reply).
[7] ECF No. 25.
[8] ECF No. 15 at 1.
[9] ECF No.  18 at 2.
[10] ECF No. 4.
[11] ECF No. 12 (transcript) at 24.
[12] *Id*. at 17.
[13] *Id*. at 24.
[14] *Id*. at 16.

reviewing clinical[15] and opinion[16] evidence, that Murnahan could essentially perform less than the full range of light work, here largely relying on the opinions of state agency consultants, which were given great weight.[17]

The ALJ then expressly noted that RFC's finding of light work with limitations meant that testimony from a vocational expert was needed to determine "the extent to which these limitations erode the unskilled light occupation base."[18] To that point, the vocational expert testified that three jobs were available to Murnahan in sufficient numbers in the national economy.[19] The ALJ further observed that while the need for a sit/stand option – a requirement of the RFC – was not addressed in the definition of these three jobs in the DOT,[20] the vocational expert – "based on his experience" – properly concluded that the jobs identified were consistent with both the RFC requirements and the DOT definitions.[21]

***Present issue facts*** In anticipation of Step Five testimony from a vocational expert, Murnahan's non-attorney representative[22] filed a request that the record be held open for thirty days after the hearing so "that we may submit a post-hearing brief in the event that there is testimony taken from the vocational expert."[23] The request does not indicate that

---

[15] *Id*. at 19-22.
[16] *Id*. at 22-23.
[17] *Id*.
[18] *Id*. at 25.
[19] *Id.*
[20] Dictionary of Occupational Titles.
[21] ECF No. 12 at 25.
[22] *Id*. at 13.
[23] *Id*. at 388.

Murnahan sought leave to introduce new evidence after the hearing and the record does not show that the ALJ addressed this "request" prior to the hearing.

Subsequent to the hearing, Murnahan's non-attorney representative submitted a lengthy "post-hearing memorandum of law and objections to the vocational witness' testimony,"[24] together with a 77-page attachment containing twelve individual exhibits consisting of articles, court decisions, and opinions from vocational experts not involved in this case, all raising issues about the use of the DOT for determining how various occupations are actually performed. [25]

On July 12, 2018, or during the time between the hearing itself and the decision,[26] the ALJ replied to Murnahan's non-attorney representative.[27] In the reply the ALJ began by noting that Murnhan's post-hearing brief was "unsolicited."[28] He stated that in the reply that followed he was "overruling all your objections to the vocational testimony and den[ying] your request for a supplemental hearing."[29]

In the three-page reply the ALJ gave his reasons for those decisions as follows:

---

[24] *Id*. at 389-402.
[25] *Id*. at 403-480.
[26] The hearing was conducted on May 30, 2018 and the decision issued on August 16, 2018.
[27] *Id*. at 481-83.
[28] *Id*. at 481.
[29] *Id*.

1.      The ALJ was asked about his methodology; your representative "had every opportunity to question him" about that methodology and "did so."[30]

2.      The non-attorney representative's "inadequate" "lay[]" opinions about why the jobs identified are not performed in the manner testified to by the ALJ are "unpersuasive." If Murnahan's representative wished to offer any other expert testimony at the hearing he could have done so but did not.[31]

3.      The ALJ reminded the representative that "some" of the hypotheticals offered to the vocational expert did include a sit/stand option and further reminded the representative that "[y]our lay opinion that this is an accommodation does not persuasively rebut the opinion of the vocational expert" – an opinion that is based, at least in part, on years of experience, training and expertise.[32]

4.      The ALJ moreover stated that Murnahan's representative presented "no contrary vocational evidence of any kind at this hearing," called "no vocational expert of your own" and "submitted not a single page of claim-specific evidence" to weigh against the VE's testimony.[33]

5.      The ALJ noted that while Murnahan raised "some new objections" in the post-hearing brief not raised in the hearing, he further noted that the "generic/boilerplate

---

[30] *Id.*
[31] *Id.*
[32] Id.
[33] *Id.*

5

exhibits from years past" are "unrelated to this specific claim" and are thus "unpersuasive."[34]

6.      In addition, the ALJ concluded that the representative's "lay opinion" about Murnahan's past work was unpersuasive and "insufficient" to rebut the testimony of the VE in that regard. Further, the ALJ found that the representative's "conclusion that the VE is unqualified" is "unsupported," noting that the VE's qualification were a matter of record "for some time" yet elicited no specific objections either before or at the hearing.[35]

7.      The ALJ then undertook a lengthy review of when, under the regulations, a continuance of a hearing or the calling of a supplemental hearing is appropriate.[36] In light of those factors the ALJ initially stated that "by your own acknowledgement the testimony of the VE did not take you by surprise; and no surprise was alleged in your 92-page post-hearing submission." He went on to state that Murnahan has alleged no "new issue" requiring a supplemental hearing; that none of the other specific reasons for a new hearing set forth in the regulations apply; and that "you had every opportunity for 'detailed cross-examination' of the VE at the hearing."[37]

8.      Finally, the ALJ concluded by observing that "many of your arguments challenge the legitimacy of the expertise of the VE, and reliance on the DOT."[38] But the

---

[34] *Id.*
[35] *Id.*
[36] *Id.* at 482.
[37] *Id.*
[38] *Id.*

ALJ re-iterated that "none of your arguments persuade me that the VE is unqualified" and further stated that "the Agency's Rules and Regulations recognize the DOT as a valid source," thus binding the ALJ to accept its use in disability cases.[39]

The ALJ concluded this exchange by noting in the opinion that "the claimant's representative submitted a post-hearing brief objecting to [the] vocational expert's testimony. [I] responded to these objections, overruling them, on July 12, 2018."[40]

### Murnahan's position

As noted above, Murnahan raises a single issue for judicial review:

The ALJ erred in relying on vocational expert testimony to fulfill his Step 5 burden without properly addressing rebuttal evidence and objections to the vocational expert's testimony.[41]

Murnahan argues that the ALJ erred by failing to "substantively" address her objections to the VE testimony, and the rebuttal evidence that she provided in the post-heating brief, while instead improperly characterizing these objections as mere "lay opinions" and "chastiz[ing] [Murnahan's] representative for not raising these issues during the hearing ...."[42] This purported failure to "substantively address" the rebuttal evidence

---

[39] *Id.*
[40] *Id.* at 25.
[41] ECF No. 15 at 1.
[42] *Id.* at 5.

contained in the post-hearing memorandum has thus thwarted meaningful judicial review here, the remedy for which is a new hearing.[43]

After setting forth the proposition that a claimant has a right to challenge or rebut testimony of a vocational expert,[44] Murnahan sets out her six objections to the VE testimony that she presented to the ALJ and argues that the objections concern "factually valid" issues that were not specifically addressed by the ALJ.[45]

First, Murnahan contends that while the jobs identified by the ALJ "were unskilled jobs when the Dictionary of Occupational Titles (DOT) was last updated 30+ years ago, this is no longer the case if one considers how these jobs are currently performed."[46] She maintains that it is a "well-known fact" that the DOT is an "obsolete and static database" that is no being updated and that the information formerly provided by the DOT is now provided by O*NET.[47] To that end, she asserts that the DOT is set to be succeeded or replaced in 2020  by new systems that provide more accurate vocational information.[48]

---

[43] *Id.*

[44] *Id.* at 6-8. The Commissioner does not directly object to this general proposition but does argue that a claimant who does not object to testimony *during the hearing* waives any objection. ECF No. 18 at 3 (emphasis added). Moreover, as will be discussed later in greater detail, a good amount of case law has developed as to how to make and preserve objections or waive them in the context of social security disability hearings.

[45] ECF No. 15 at 9.

[46] *Id.*

[47] *Id.*

[48] *Id.* at 10-11.

Next, she contends that up-to-date vocational information does not support the VE's testimony that the jobs identified here are currently performed as unskilled jobs.[49]  She maintains that it is improper to give absolute preference to the "outdated" DOT definitions of job requirements.[50] She argues that while the DOT is presumed to be reliable, that presumption can be overcome and cannot be automatically assumed.[51]

With that said, she individually addresses the purportedly "deficient" four reasons given by the ALJ for rejecting Murnahan's arguments set forth in the post-hearing brief.

*Improper lay opinion by counsel* Murnahan argues that the ALJ's contention that her objections were improperly based on "lay opinions" by her counsel "misses the mark completely" because "the heart" of her objections is not the personal view of her counsel but the government sources that say that the DOT is an obsolete or outdated resource.[52] She further states that any improper lay opinion here is from the ALJ who overruled Murnahan's objections without consulting a VE at a supplemental hearing.[53]

*Experience of the VE as a basis for his opinion* Here Murnahan maintains that the ALJ impermissibly "conflated" a non-issue of the VE's "credibility" with the real issue of whether his opinion was "reliable."[54] Specifically, Murnahan did not claim that the VE was

---

[49] *Id.* at 11-12.
[50] *Id*. at 12.
[51] *Id*. at 12.
[52] *Id*. at 14.
[53] *Id*.
[54] *Id.*

lying or not credible, or that he lacked experience, but does claim that his opinion was unreliable because he did not consider all the evidence.[55]

*Murnahan's failure to object at the hearing or produce new evidence at that time.* Murnahan essentially contends that there is no rule requiring a claimant to raise every issue with a VE's testimony at the hearing and that it would be unreasonable to have such a requirement, inasmuch as no claimant could know in advance what a VE would say at the hearing or what sources would be relied upon by the VE.[56] Further, Murnahan argues that the regulations give a claimant the right to review and respond to VE testimony "prior to the issuance of the decision," without imposing the additional requirement that this be done at the hearing.[57] She continues that the ALJ was incorrect in saying that Murnahan admitted that the VE's testimony at the hearing did not take her by surprise.[58] Murnahan here acknowledges that while she was aware that the VE would testify, and so was not "surprised" in that sense, but given that she could not know in advance what the VE would say or what sources would be used to support the testimony, the actual testimony and its supporting evidence was a "surprise," unknowable in advance of the hearing.[59]

*Murnahan conclusion*  Murnahan concludes by stating that when faced with the rebuttal evidence in the post-hearing brief the ALJ was required to either (1) demonstrate that this evidence was irrelevant or not probative of the Step Five issue or to (2) cite to

---

[55] *Id*. at 14-15.
[56] *Id*. at 16-17.
[57] *Id*. at 17.
[58] *Id*. at 18.
[59] *Id*.

vocational evidence that would counter the rebuttal evidence.[60] Because the ALJ failed at either approach and because the reviewing court may not on its own craft a response in either area, the ALJ's decision must be reversed and the matter remanded for a new hearing.[61]

### Commissioner's position

*Waiver* As noted above, the Commissioner begins by noting that Murnahan's representative did not object at the hearing to any of the VE's testimony nor raise any issue concerning the DOT as being outdated or unreliable.[62]

As regards to objections to the VE's testimony raised in the post-hearing brief, the Commissioner states initially that a claimant who fails to object at the hearing to such testimony waives any later objection.[63] The Commissioner points out that this waiver also applies when an objection is raised in a post-hearing brief but before the ALJ's decision is entered.[64] Merely arguing that such a rule is "impractical and patently unfair" does not provide a legal basis for not following the well-established waiver rule.[65] Moreover, the Commissioner argues that while objections to the testimony of a VE needs to be made at the hearing, additional evidence must be submitted five days before the hearing.[66]

---

[60] *Id*. at 19.
[61] *Id*.
[62] ECF No. 18 at 3.
[63] *Id*. at 3-6 (citations omitted).
[64] *Id*. at 5 (citation omitted).
[65] *Id*.
[66] *Id*. at 6 (citation omitted).

In addition, as stated above, while Murnahan's representative did "ask" before the hearing that the record be held open, the ALJ never formally granted that request and Murnahan did not move to hold the record open at the hearing. Indeed, the Commissioner notes that Murnahan's representative at the hearing indicated that the factual record was complete, stipulated to the qualifications of the VE and raised no issues – however general – as to how the O*NET compares with the DOT in terms of reliability and usefulness.[67]

The Commissioner further contends that SSR 96-9p gives claimants the opportunity to respond to VE evidence after the hearing only in cases where the RFC is for sedentary work, not, as in this case, where it was for light work.[68] Further, the Commissioner maintains that the rules providing for a supplemental hearing when a claimant is "surprised" by testimony at the hearing  only applies to limited circumstances and not to every hearing.[69] As the Commissioner observes, under Murnahan's definition of "surprise" every hearing would qualify for a supplemental hearing because no hearing is a pre-arranged script.[70]

*ALJ's response to post-hearing objections*___The Commissioner asserts that Murnahan's argument here is that the VE's testimony was consistent with the DOT but that the O*Net cannot now be considered reliable.[71]

---

[67] *Id*. at 5.
[68] *Id*. at 7 (quoting SSR 96-9p).
[69] *Id.*
[70] *Id*. at 7-8.
[71] *Id*. at 9.

First, the Commissioner notes that O*NET is not simply a pure one-to-one update of the DOT where a specific job defined one way in the DOT but is re-defined and updated in the DOT. Rather, DOT lists about 14,000 individual jobs while the O*NET has 1,100 "occupational units."[72] Thus, rather than providing an "apples to apples" comparison, O*NET averages out the skill levels of the tasks that comprise its "occupational unit" whereas the DOT has a separate skill level for each specific occupation.[73] Thus, the O*NET's broader "occupational unit" average is not necessarily more reliable than the DOT's more specific job description.[74]

Next, the Commissioner observes that it is misleading to say that because the Department of Labor may be moving toward greater use of the O*NET then O*NET is more reliable in Social Security Disability proceedings.[75] Here the Commissioner notes that the Department of Labor is using O*NET for "career development and explorations purposes," which is not the same as how the Commissioner evaluates disability claims.[76] Moreover, the Commissioner points out that the current regulations state both that an ALJ will take administrative notice of "reliable job information" and also that he will take notice of the DOT – thus establishing that the DOT is *per se* reliable.[77]

---

[72] *Id*.
[73] *Id*.
[74] *Id*. at 9-10 (citation omitted).
[75] *Id*. at 10.
[76] Id.
[77] *Id*.

13

Indeed, SSR 00-04 specifically states that ALJs "rely primarily on the DOT for information of work in the national economy.[78] By contrast, there is no rule or regulation requiring the ALJ to compare a VE's testimony to the O*NET.[79] While the Commissioner is currently developing a new Occupational Information System for use in evaluating disability claims, the DOT remains the primary source for occupational information.[80]

Finally, the Commissioner contends that the ALJ was not required to accept the "lay opinion" of Murnahan's representative.[81] Although Murnahan here contends that this opinion was based on a government source, *i.e*, the O*NET, it remains a lay opinion seeking to rebut the expert testimony of the VE.[82]

## Analysis

As a preliminary observation, this matter is to be resolved under the well-know substantial evidence standard.

The issues presented here – often by the same claimant's attorney as in this case[83] - have been previously considered by at least five judges of this district, including by me, mostly within just the current year.[84] Moreover, the Sixth Circuit in January of this year

---

[78] *Id*.

[79] *Id*. at 11.

[80] *Id*.

[81] *Id*. at 13.

[82] *Id*.

[83] Attorney Osterhout is the claimant's attorney in three of the five prior cases – *Adams, Zimmerman and Townsend*. His presence in this case means he has been involved in more than half – four of six – of the cases dealing with this issue in this district.

[84] *Adams v. Commissioner*, 2020 WL 5849353 (N.D.Ohio Sept. 30, 2020)(Baughman, MJ); *Luna v. Commissioner*, 2020 WL 5549318 (N.D. Ohio Aug. 28, 2020)(Henderson,

has provided important clarification as to the continuing validity and reliability of the DOT.[85] Given this rather substantial and recent body of authority, I am especially mindful that my resolution of this case needs to acknowledge the reasoning of these learned opinions.

I begin the analysis here by observing that every decision in this district agrees on several fundamental points.

First, as Judge Barker noted in *King*, the Sixth Circuit's 2020 decision in *O'Neal* restated the holding that "the DOT continues to be recognized as a source of reliable job information" at Step Five.[86] In that regard, an ALJ is not required to consult the job descriptions contained in the O*NET.[87]

Next, when the VE upon being asked identifies no conflict between his testimony and the DOT, an ALJ may rely on that testimony and is not required to "conduct an independent investigation into the VE's to determine whether it was correct."[88]

Further, absent any specific evidence to the contrary, such as when a claimant makes an on the record request at the hearing to hold the hearing open for post-hearing brief detailing his objection to the VE's testimony and the ALJ clearly agrees to so hold the

MJ); *King v. Saul*, 2020 WL 1025170 (N.D. Ohio March 3, 2020) (Barker, J);
*Zimmerman v. Commissioner*, 2019 WL 4736267 (N.D. Ohio Sept. 27, 2019)(Ruiz, MJ);
*Townsend v. Commissioner*, 2018 WL 5808745 (N.D. Ohio Nov. 6, 2018).
[85] *O'Neal v. Commissioner of Social Security*, 799 Fed. Appx. 313 (6th Cir. 2020).
[86] *Saul*, 2020 WL 1025170, at *13; see also, *Luna*, 2020 WL 5549318, at *16.
[87] *Saul,* 2020 WL 1025170, at *15, fn. 20.
[88] *O'Neal*, 799 Fed. Appx. at 318 (internal quotation and citation omitted).

record open,[89] a claimant who fails to object at the hearing to the testimony of a VE waives the right to subsequently object to that testimony and an ALJ has no obligation to address unsolicited post-heating objections to the VE testimony.[90]

Moreover, where there is no direct conflict between the DOT and the testimony of the VE requiring an ALJ to explain how that conflict was resolved, there is no heightened standard of articulation for an ALJ to meet when considering post-hearing criticisms/concerns about the VE's testimony. The ALJ is required to "consider" the written post-hearing submission, "but nothing more," and may then conclude that the VE's opinion, when consistent with the DOT and based on the VE's experience, is more credible.[91]

Finally, where the ALJ has credited the opinion of the VE as consistent with the DOT and based on the VE's experience, the reviewing Court may not, consistent with substantial evidence review, substitute its judgment as to the more credible vocational opinion by preferring the view offered by the claimant over that determined by the ALJ.[92]

In applying the foregoing principles to this matter, I find that Murnahan neither objected to the VE's testimony at the hearing nor obtained any agreement from the ALJ either prior to the hearing or at the hearing to hold the proceedings open for a later submission of an objection. Thus, she waived the right to object to that testimony. In that

---

[89] *Adams*, 2020 WL 58449353, at *3.
[90] *Luna*, 2020 WL 5549318, at ** 14-15; *Zimmerman*, 2019 WL 4736267, at *9.
[91] *Luna*, 2020 WL 5549318, at *16.
[92] *Id*. at *17.

posture, I further find no error in how the ALJ replied to the post-hearing brief. As a matter of law the ALJ was correct that he was entitled to recognize the DOT as a reliable source of job information and further correct in relying on the opinion of the VE who stated on the record that, with a stated exception, his opinion was consistent with the DOT.[93] As such, I also find that no additional level of articulation by the ALJ was needed.

## Conclusion

For the reasons stated, the decision of the Commissioner is hereby affirmed.

IT IS SO ORDERED.

Dated: November 30, 2020                                    <u>William H. Baughman Jr.</u>
                                                           United States Magistrate Judge

---

[93] ECF No. 12 (transcript) at 76-77.